## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| AMBER WOOD, *et al*., individually and on behalf of all others similarly situated, | Case No. 5:20-cv-11054-JEL-APP |
| Plaintiffs, | District Judge Judith E. Levy |
| v. | Magistrate Judge Anthony P. Patti |
| FCA US LLC, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Amber Wood, Thomas Weiner, Karen Burke, Nick Gizzarelli, Guy West, Kyle Davis, Rebekah Aeren Wright, Catherine Coppinger, Kimberly Eager, Roberto Hernandez, Mikaelyn McDowell, Rosalind Burks, Holly Hickman, Amber Portugal, Michael Sanchez, Adam Dyer, Arteal Jordan, Vivien Nagy, Katlyn Wills, Cheryl Miller, Kelly Johnson, Holly Kundel, Ryan Hall, Danielle Coates, Kelsey Williams, Daniel Scott, Ryan Graham, Robert Johnston, Deborah Johnston, Michelle Schmid, Nathaneal Romanchuk, Nicolette Watson, Desiree Tarro, Pamela Anderson, Caren Christman, Joshua Caples, Luis Munoz, Sherri McCall, Krishawn Durham, Katie Kuczkowski, Daniel McGorrey, and Tera Castillo (collectively,

"Plaintiffs"), by and through their attorneys, respectfully move the Court for an Order:

1.      Granting preliminary approval of the proposed class action Settlement;

2.      Preliminarily certifying, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the proposed Settlement Class for the purposes of providing notice to the Members of the proposed Settlement Class, approving the form and content of, and directing the distribution of the proposed Class Notice, attached to the Settlement Agreement as Exhibits B and C;

3.      Authorizing and directing the Parties to retain Kroll Settlement Administration as the Settlement Administrator;

4.      Appointing The Miller Law Firm, P.C., Hagens Berman Sobol Shapiro, LLP, and McGuire Law, P.C. as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Sauder Schelkopf, and Berger Montague P.C. as Plaintiffs' Steering Committee Class Counsel; and

5.      Scheduling a date for the Final Approval Hearing not earlier than one hundred and eighty (180) days after Preliminary Approval is granted.

In support of this Motion, Plaintiffs have contemporaneously filed a Memorandum of Law, with exhibits thereto.

In accordance with L.R. 7.1(a), Plaintiffs' counsel sought the concurrence of Defendant's counsel in the relief sought by this Motion on March 18, 2022, and

Defendant's counsel stated that Defendant does not oppose Plaintiffs' requested relief contained herein.

For the reasons set forth in the Memorandum of Law, Plaintiffs respectfully request that the Court grant their Unopposed Motion.

Dated: March 23, 2022                      Respectfully Submitted,

**THE MILLER LAW FIRM, P.C.**

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Elaine T. Byszewski
Christopher R. Pitoun
301 North Lake Avenue, Suite 920
Pasadena, CA 91101

Telephone: (213) 330-7150
Facsimile: (888) 381-2889
elaine@hbsslaw.com
christopherp@hbsslaw.com

**MCGUIRE LAW, P.C.**
Myles McGuire
Evan M. Meyers
Eugene Y. Turin
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

*Interim Co-Lead Class Counsel for
Plaintiffs and the Putative Class*

**MCCUNE WRIGHT AREVALO, LLP**
Richard D. McCune
David C. Wright
Steven A. Haskins
Mark I. Richards
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

**SAUDER SCHELKOPF**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975

4

Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

**BERGER MONTAGUE PC**
Russell D. Paul
Jeffrey L. Osterwise
Amey J. Park
Abigail J. Gertner
1818 Market Street Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
josterwise@bm.net
apark@bm.net
agertner@bm.net

*Interim Plaintiffs' Steering Committee for
Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| AMBER WOOD, *et al*., individually and on behalf of all others similarly situated, | Case No. 5:20-cv-11054-JEL-APP |
| Plaintiffs, | District Judge Judith E. Levy |
| v. | Magistrate Judge Anthony P. Patti |
| FCA US LLC, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF <u>CLASS ACTION SETTLEMENT</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.  Whether Plaintiffs' settlement with FCA US LLC, embodied in the Settlement Agreement (attached as Exhibit 1), is fair, reasonable, and adequate and should be preliminarily approved?

    Suggested Answer: Yes.

2.  Whether the Court should provisionally certify the Settlement Class as it is defined herein under Federal Rule of Civil Procedure 23(a) and 23(b)(3)?

    Suggested Answer: Yes.

3.  Whether the Court should appoint The Miller Law Firm, P.C., Hagens Berman Sobol Shapiro, LLP, and McGuire Law, P.C. as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Sauder Schelkopf, and Berger Montague P.C. as Plaintiffs' Steering Committee Class Counsel where they have extensive experience in class action litigation and exhaustive resources to ensure the matter is prosecuted efficiently and effectively?

    Suggested Answer: Yes.

4.  Whether the Court should grant preliminary approval of the Parties' proposed Class Action Settlement Agreement where federal policy favors settlement of class actions; the Parties negotiated the proposed settlement at arm's-length and in good faith; and the settlement reflects a fair, adequate, and reasonable resolution to the dispute?

Suggested Answer: Yes.

5. Whether the Court should approve the Parties' proposed notices to Class Members where they fairly and fully apprise the prospective Members of the Class of the terms proposed in the settlement, the reasons for the settlement, the legal effect of the settlement, and provide Class Members with an opportunity to lodge objections and/or opt out?

Suggested Answer: Yes.

6. Whether the Court should set a date for a fairness hearing to consider any objections to the proposed settlement?

Suggested Answer: Yes.

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................. ii

TABLE OF CONTENTS.............................................................. iv

TABLE OF AUTHORITIES ...........................................................v

TABLE OF MOST CONTROLLING AUTHORITIES ..................................... viii

   I.   INTRODUCTION........................................................2

   II.  PROCEDURAL HISTORY ...............................................4

   III.   FACTUAL BACKGROUND ............................................4

   IV.   THE SETTLEMENT AGREEMENT AND TERMS ..............................5

      A. The Proposed Settlement Class ....................................5

      B. The Relief and Settlement Consideration ............................6

      C. Release of Claims ................................................9

      D. Settlement Notice and Right to Opt Out ..............................9

      E. Class Counsel Fees and Expenses and Plaintiffs' Service Awards ...........11

   V. THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY

      CERTIFIED ......................................................11

      A. The Settlement Class Satisfies the Requirements of Rule 23(a)................12

      B. The Settlement Class May be Properly Certified Under Rule 23(b)(3)......14

         1. This Action may be certified under Rule 23(b)(3)...................14

           i. Common issues of fact and law predominate .......................15

           ii. A class action is a superior method of adjudication ...........................16

   VI. THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR

      PRELIMINARY APPROVAL....................................................17

      A. There is No Fraud or Collusion ....................................18

      B. The Complexity, Expense, and Likely Duration of the Litigation Favor

        Approval....................................................................19

      C. The Amount of Discovery Engaged in by the Parties Favors Approval .....20

      D. The Likelihood of Success on the Merits Favors Approval ....................20

      E. Experienced Class Counsel's Opinions Favor Approval ...........................22

      F. The Settlement is Fair to Absent Class Members........................22

      G. The Settlement is Consistent with the Public Interest .................23

   VII.  THE COURT SHOULD APPOINT CLASS COUNSEL ...........................23

   VIII. THE FORM AND MANNER OF NOTICE ARE PROPER ....................25

   IX.   CONCLUSION............................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................ 12, 14, 15

*Bautista v. Twin Lakes Farms, Inc.*,
  2007 WL 329162 (W.D. Mich. Jan. 31, 2007) ....................................................18

*Beattie v. CenturyTel, Inc.*,
  234 F.R.D. 160 (E.D. Mich. 2006) ............................................................. 13, 15

*Bobbit v. Acad. of Court Reporting, Inc.*,
  252 F.R.D. 327 (E.D. Mich. 2008) ....................................................17

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006).......................................................... 13, 15

*Daoust v. Maru Rest., LLC*,
  2019 WL 1055231 (E.D. Mich. Feb. 2, 2019)............................................ 12, 25

*Granada Inv., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir.1992)......................................................... 17, 23

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ............................................................. 21, 23

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................................................21

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
  1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ....................................................22

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................. 18, 19, 21

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)..................................................................17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013)..................................................................16

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)................................................. 12, 13

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) .....................................................20

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012) ......................................................16

*Rankin v. Rots*,
2006 WL 1876538 (E.D. Mich. June 27, 2006) .................................22

*Robinson v. Ford Motor Co.*,
2005 WL 5253339 (S.D. Ohio June 15, 2005) ...................................18

*Rutherford v. City of Cleveland*,
137 F.3d 905 (6th Cir. 1998)..............................................................13

*Senter v. Gen. Motors Corp.*,
532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976)................................13

*Williams v. Vukovich*,
720 F.2d 909, 922 (6th Cir. 1983) ............................................... 17, 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ...........................................................15

**Other Authorities**

2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, § 4.74 (5th ed. 2020) ....16
2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, § 11.51 (3d ed. 1992) ...19

**Rules**

Fed. R. Civ. P. 23 ..................................................................... *passim*
Fed. R. Civ. P. 23(a)............................................................... 12, 13
Fed. R. Civ. P. 23(a)(4)................................................................23
Fed. R. Civ. P. 23(b) .............................................................. 12, 14
Fed. R. Civ. P. 23(b)(3).................................................... 14, 16, 17
Fed. R. Civ. P. 23(c)(2)................................................................24
Fed. R. Civ. P. 23(e)............................................................. 17, 24
Fed. R. Civ. P. 23(e)(1)................................................................24

Fed. R. Civ. P. 23(h) ............................................................................26
Fed. R. Civ. P. 23(g) ....................................................................... 23, 24
Fed. R. Civ. P. 23(g)(1)(A) ............................................................. 23, 24

## <u>TABLE OF MOST CONTROLLING AUTHORITIES</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*Beattie v. CenturyTel, Inc*.,
    234 F.R.D. 160 (E.D. Mich. 2006)

*Beattie v. CenturyTel, Inc*.,
    511 F.3d 554 (6th Cir. 2007)

*In re Cardizem CD Antitrust Litig*.,
    218 F.R.D. 508 (E.D. Mich. 2003)

*Daffin v. Ford Motor Co*.,
    458 F.3d 549 (6th Cir. 2006)

*Daoust v. Maru Rest., LLC*,
    2019 WL 1055231 (E.D. Mich. Feb. 2, 2019)

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.*
    *Motors Corp*., 497 F.3d 615 (6th Cir. 2007)

*IUE-CWA v. Gen. Motors Corp*.,
    238 F.R.D. 583 (E.D. Mich. 2006)

*In re Packaged Ice Antitrust Litig*.,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)

*In re Rio Hair Naturalizer Prods. Liab. Litig*.,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Senter v. Gen. Motors Corp*.,
    532 F.2d 511 (6th Cir.)

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*.,
    722 F.3d 838 (6th Cir. 2013)

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983)

Plaintiffs Amber Wood, Thomas Weiner, Karen Burke, Nick Gizzarelli, Guy West, Kyle Davis, Rebekah Aeren Wright, Catherine Coppinger, Kimberly Eager, Roberto Hernandez, Mikaelyn McDowell, Rosalind Burks, Holly Hickman, Amber Portugal, Michael Sanchez, Adam Dyer, Arteal Jordan, Vivien Nagy, Katlyn Wills, Cheryl Miller, Kelly Johnson, Holly Kundel, Ryan Hall, Danielle Coates, Kelsey Williams, Daniel Scott, Ryan Graham, Robert Johnston, Deborah Johnston, Michelle Schmid, Nathaneal Romanchuk, Nicolette Watson, Desiree Tarro, Pamela Anderson, Caren Christman, Joshua Caples, Luis Munoz, Sherri McCall, Krishawn Durham, Katie Kuczkowski, Daniel McGorrey, and Tera Castillo (collectively, "Plaintiffs"), on behalf of themselves and the proposed Class, respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") and respectfully move the Court for preliminary approval of the proposed Class Action Settlement ("Settlement" or "Settlement Agreement")[1] entered into with Defendant FCA US LLC ("Defendant" or "FCA US"), as set forth in the Settlement Agreement, attached as Exhibit 1.

---

[1] Plaintiffs have agreed to the Settlement. In the interest of expediency, the Parties have agreed that Plaintiffs' signatures need not be included in the Settlement Agreement at this time, but that their signatures will be included when Plaintiffs seek final approval of the Settlement. Instead, Interim Co-Lead Class Counsel have signed the Settlement Agreement on Plaintiffs' behalf and are in the process of colleting formal signatures from each Plaintiff.

## I.    INTRODUCTION

Plaintiffs and FCA US (collectively, the "Parties") have reached a proposed Settlement resolving all allegations that certain vehicles with a 2.4L Tigershark engine: model years 2015-2017 Chrysler 200; model years 2013-2016 Dodge Dart; model years 2014-2019 Jeep Cherokee manufactured prior to July 2018; model years 2015-2018 Jeep Renegade; model years 2017-2018 Jeep Compass; model years 2015-2018 Ram Promaster City; and model years 2016-2018 Fiat 500x ("Class Vehicles") were manufactured, marketed, sold, and leased with a defect that caused these vehicles to consume excessive amounts of engine oil which can result in engines shutting down without warning and releasing excessive oil into the exhaust system leading to excess emissions (the "Defect"), that FCA US sold these vehicles knowing of the safety risks posed by the Defect, and that it would be material to a reasonable consumer. The Consolidated Master Class Action Complaint ("CMCAC") (ECF No. 41) alleges over 300 causes of action against FCA US for both statutory violations and under common law, on behalf of Plaintiffs and Class Members—current and former owners and lessees of the Class Vehicles.

Over the past sixteen (16) months, the Parties have participated in three formal mediation sessions (on October 26, 2020, April 6, 2021, and August 25, 2021) with the assistance of experienced mediators Judge Layn Phillips and Gregory P. Lindstrom of Phillips ADR. The Parties have also engaged in numerous individual

discussions with the mediators and countless arm's-length negotiations with each other. These extensive negotiations included the production of approximately 10,000 pages of documents from FCA US, as well as Plaintiffs' consultation with multiple experts to provide independent analysis of the alleged Defect and FCA US's proposed remedies.

As a result of those negotiations, which end almost two and half years of litigation, Plaintiffs have achieved a settlement that will provide substantial relief to the Class. The benefits the Class Members will receive as a result of this Settlement are eminently fair, reasonable, and adequate, especially when compared to settlements in similar cases and in light of the significant risks posed by continued litigation.

In particular, pursuant to the Settlement Agreement and discussed in greater detail below, Class Members will receive an extension on their vehicle's existing Powertrain Limited Warranty to seven (7) years or one-hundred thousand (100,000) miles, vehicle improvements in the form of no-cost software upgrades, repair-related reimbursements, and cash compensation. *See* Section IV.B, *infra.* This is an exceptional result for the Class, which seeks to ensure that the Defect is remedied in Class Members' vehicles and that Class Members receive compensation for past harm they have suffered due to the Defect.

Accordingly, the Settlement satisfies all the prerequisites for preliminary approval. For these reasons stated more fully below, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed Preliminary Approval Order.

## II.     PROCEDURAL HISTORY

Plaintiffs originally filed nine separate complaints, which were filed as early as October 2019, before the cases were consolidated before this Court on August 6, 2020 (ECF No. 20). Shortly thereafter, on September 10, 2020, the Court stayed proceedings while the Parties explored settlement. ECF No. 33. On October 21, 2020, Plaintiffs filed the CMCAC (ECF No. 41), which includes over 300 nationwide and state causes of action brought by Plaintiffs from twenty-seven (27) different states. Since the stay of proceedings began on September 10, 2020, the Parties have been engaged in extensive discovery in conjunction with, and to assist, the Parties' mediation efforts.

## III.     FACTUAL BACKGROUND

Plaintiffs have alleged that the Class Vehicles contain the Defect, which causes them to improperly and unexpectedly burn off and/or consume abnormally high amounts of oil, resulting in the Class Vehicles shutting down during the course of their normal operation—placing the occupants and surrounding vehicles at an increased risk of serious injury and death. CMCAC ¶¶ 2-3, 357-77. Plaintiffs have

4

alleged that, due to the Defect, the Class Vehicles have been emitting harmful emissions at levels that are in excess of state and federal regulations. *Id.* ¶¶ 4, 378-392.

Plaintiffs contend that FCA US knew about these defects prior to sale and has received hundreds, and possibly thousands, of reports from Class Members relating to their vehicles shutting down without warning due to low oil levels. *Id.* ¶¶ 5, 401-20. Until this proposed Settlement is approved, Plaintiffs and Class Members must pay out-of-pocket and take steps necessary to avoid repeat occurrences of their vehicles unexpectedly shutting down due to the Defect. *Id.* ¶ 6.

## IV.   THE SETTLEMENT AGREEMENT AND TERMS

### A.   The Proposed Settlement Class

Plaintiffs seek to certify the following Class for Settlement purposes only:

> All individuals who purchased or leased in the United States one of the following vehicles equipped with a 2.4L Tigershark engine: model years 2015-2017 Chrysler 200; model years 2013-2016 Dodge Dart; model years 2014-2019 Jeep Cherokee manufactured prior to July 2018; model years 2015-2018 Jeep Renegade; model years 2017-2018 Jeep Compass; model years 2015-2018 Ram Promaster City; and model years 2016-2018 Fiat 500x.

*See* Settlement Agreement, § 2.9.

Excluded from the Settlement Class are: FCA US; any affiliate, parent, or subsidiary of FCA US; any entity in which FCA US has a controlling interest; any officer, director, or employee of FCA US; any successor or assign of FCA US; and

any judge to whom this Action is assigned, his or her spouse; individuals and/or entities who validly and timely opt out of the settlement; consumers or businesses that have purchased Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means); and current or former owners of a Class Vehicles that previously released their claims in an individual settlement with FCA US with respect to the issues raised in the Action. *Id.*

### B.    The Relief and Settlement Consideration

The Settlement provides substantial relief to the Settlement Class. The relief—which is nationwide in scope—includes monetary relief, remedies for the Defect, and an extended warranty to cover future costs incurred as a result of the Defect. The Settlement also includes direct notice, paid for by FCA US, of the Defect and the rights of Class Members. Specifically, the Settlement provides the following:

### 1.    Extended Warranty

Pursuant to the Settlement, FCA US will extend the existing Powertrain Limited Warranty, applicable to the Class Vehicles, to cover the cost of all parts and labor needed to repair a condition caused by the Defect, to a period of seven (7) years or one-hundred thousand (100,000) miles (whichever occurs first) from the In-Service Date of the Class Vehicle. *Id.* § 3.1. This Extended Warranty follows the Class Vehicles; thus, it would apply to subsequent purchasers and lessees. *Id.* § 3.2.

### 2. Product improvements

FCA US has implemented three Customer Service Notifications ("CSN") to remedy the Defect. FCA US has acknowledged that each of these CSNs, specifically CSN W20, CSN W80, and CSN W84, represent part of the consideration to the Class in exchange for the Settlement. *Id.* § 3.6.

All Class Members who are current owners or lessees of a Class Vehicle subject to CSN W20 and CSN W84 are entitled to bring their vehicle to any authorized FCA US dealership to have the Powertrain Control Module (PCM) or PCM and Transmission Control Module (TCM) reprogrammed to address any excess oil consumption and repair the Defect in their Class Vehicle. *Id.* § 3.7.

All Class Members who are current owners or lessees of Class Vehicles subject to CSN W80 may have an oil consumption test performed, free of charge, by any authorized FCA US dealership. Moreover, if the Class Vehicle fails the oil consumption test, the Class Member is entitled to have an authorized FCA US dealership replace the vehicle's engine long block pursuant to CSN W80 at no cost to the Class Member. *Id.* § 3.8.

### 3. Reimbursements for Repairs

In connection with CSN W20, CSN W80, and CSN W84, any Class Member who paid for a repair relating to the Defect is entitled to submit a claim for reimbursement. *Id.* § 3.9.

### 4. Repair-Related Reimbursements

FCA US will also reimburse Class Members the costs of towing and repair-related transportation expenses, such as a rental car ("Repair-Related Reimbursements"), that were incurred in connection with a Qualifying Repair. *Id.* § 3.10. Reimbursements to Class Members for Repair-Related Reimbursements pursuant to the Settlement are limited to a total of $8 million. *Id.* In the event Claims for Repair-Related Reimbursements exceed $8 million, Claims will be adjusted on a *pro rata* basis. *Id.* The Settlement Agreement details the procedure for submitting a Claim for a Repair-Related Reimbursement. *Id.* § 3.11.

Claimants making a Claim for towing expenses shall be entitled to full reimbursement. *Id.* § 3.13. Claimants may also receive up to $300 per Claim for rental car expenses. *Id.*

### 5. Cash compensation for Class Vehicles subject to CSN W80 that had an engine long block replacement

All Class Members whose vehicles are subject to CSN W80 will automatically receive a cash payment of $340 if their vehicle is diagnosed as having a Defect and receives an engine long block replacement. *Id.* § 3.15. FCA US will work directly with its dealership network to acquire the necessary data to identify which Class Members received an engine block replacement under CSN W80. *Id.* § 3.16. FCA US will provide the data directly to the Settlement Administrator, who will then mail

a check directly to the Class Members identified by FCA US without the need to submit any Claim. *Id.*

### 6.  Costs of administration and notice

FCA US shall be responsible for all administration expenses, including notice to the Class Members of the proposed Settlement. *Id.* § 3.17.

## C.      Release of Claims

As set forth in the Settlement Agreement, including in Section VII, in exchange for the above relief, Plaintiffs and the Settlement Class will release FCA US from liability for all claims arising out of this litigation and the facts or circumstances that were or could have been alleged in the litigation. *Id.* § 7.1; § 7.2-7.7. However, the Settlement Agreement does not release claims for death, personal injuries, or excess emissions unrelated to oil consumption issues. *Id.* § 7.2.

## D.      Settlement Notice and Right to Opt Out

Following the Court granting preliminary approval of the Settlement, the Settlement Administrator will provide by direct U.S. mail, to all reasonably identifiable Class Members, a notice substantially in the form attached as Exhibit C to the Settlement Agreement (the "Short-Form Notice"). *Id.* § 5.3. The Settlement Administrator will also set up and maintain a settlement website where Class Members can access a "Long-Form Notice," attached as Exhibit B to the Settlement Agreement (*Id.*, Ex. B), a Claim Form, attached as Exhibit A to the Settlement

9

Agreement; a copy of the Settlement Agreement, the operative complaint, and additional information about the Action and Settlement. *Id.* The Short-Form Notice will include the address of the settlement website, as well as a toll-free number for an interactive voice recording service that allows Class Members to leave a request for a paper copy of the Long-Form Notice.

Within 21 days of entry of the Preliminary Approval Order, for purposes of mailing Notice, FCA US will provide the Settlement Administrator all available names and mailing address information for original and subsequent purchasers and lessors of each Class Vehicle, along with those Class Vehicles' Vehicle Identification Numbers ("VINs"). *Id.* § 5.4.

Any Class Member may make a request for exclusion by submitting a request in writing as set forth in the Notice. *Id.* § 9.2. The deadline for submitting such request will be specified in the Court's preliminary approval order. *Id.* § 9.3. Any request for exclusion shall:

(i)   state the Class Member's full name and current address;
(ii)  provide the model year and VIN of his/her/its Class Vehicle(s) and the approximate date(s) of purchase or lease; and
(iii) specifically and clearly state his/her/its desire to be excluded from the Settlement and from the Class.

*Id.* § 9.4. The Settlement Administrator shall report the names of all Class Members who have submitted a request for exclusion to the Parties on a weekly basis, beginning 30 days after the Notice Date. *Id.* § 9.7.

### E.   Class Counsel Fees and Expenses and Plaintiffs' Service Awards

Plaintiffs intend to file a motion for attorneys' fees and expenses prior to the final approval hearing. The Parties have agreed that Interim Co-Lead Class Counsel[2] may apply to the Court for attorneys' fees and expenses, inclusive of costs, for an amount not to exceed $7,500,000 without opposition from FCA US. *Id.* § 6.1.

Further, the Parties have agreed that FCA US will not oppose Plaintiffs' request, made as part of the Attorneys' Fees and Expenses Application, that FCA US separately pay Service Awards ranging between $1,000 to $3,000 to each of the Class Representatives. *Id.* § 6.2.

## V.   THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

In connection with granting preliminary approval of the Settlement, the Court should preliminarily certify the Settlement Class, comprised of all individuals who purchased or leased in the United States one of the following vehicles equipped with a 2.4L Tigershark engine: model years 2015-2017 Chrysler 200; model years 2013-2016 Dodge Dart; model years 2014-2019 Jeep Cherokee manufactured prior to July 2018; model years 2015-2018 Jeep Renegade; model years 2017-2018 Jeep Compass; model years 2015-2018 Ram Promaster City; and model years 2016-2018 Fiat 500x. *See* Settlement Agreement, § 2.9.

---

[2] "Interim Co-Lead Class Counsel" shall refer to The Miller Law Firm, P.C., Hagens Berman Sobol Shapiro, LLP, and McGuire Law, P.C.

A proposed settlement class must satisfy the requirements of Rule 23. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). To be entitled to class certification, a plaintiff must satisfy each of Rule 23(a)'s four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *See* Fed. R. Civ. P. 23(a). In addition, the proposed class must meet one of the three requirements of Rule 23(b). *See id*. That the Parties have reached a settlement in this matter is a relevant consideration in the class-certification analysis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Indeed, "courts should give weight to the parties' consensual decision to settle class action cases, because that law favors settlement in class action suits." *Daoust v. Maru Rest., LLC*, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 2, 2019)[3] (granting preliminary approval of class action settlement); *see also Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

## A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

The proposed Settlement Class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v.*

---

[3] The unpublished cases cited herein are attached as Exhibit 5.

*Gen. Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *International Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 207). The Class, consisting of the current and former owners and lessees of approximately 1.68 million Class Vehicles, is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1).

Common issues of fact and law are present because the Class's causes of action all flow from the same common defect. *See Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006) (affirming finding of commonality based on an alleged uniform design defect in vehicles). These common issues include whether the Defect exists in the Class Vehicles, and whether FCA US was aware of the Defect. Typicality is similarly satisfied because the Settlement Class's claims all arise from the same course of conduct and the common Defect. *See Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 169 (E.D. Mich. 2006) (finding typicality to be satisfied where the plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members").

Finally, the Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs have common interests with other Class Members and have vigorously prosecuted the interests of the Class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998). There is no

conflict between the Plaintiffs and any member of the Settlement Class. Rather, Plaintiffs should be applauded for their efforts in obtaining a successful resolution of this case.

### B. The Settlement Class May be Properly Certified Under Rule 23(b)(3)

In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three alternatives of Rule 23(b). Plaintiffs here seek certification under Rule 23(b)(3).

### 1. This Action may be certified under Rule 23(b)(3)

Certification under Rule 23(b)(3) is appropriate here. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1966 Amendment). Both of these requirements are satisfied here.

### i.   *Common issues of fact and law predominate*

Rule 23 (b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 632). A plaintiff "must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Id.* (citation omitted).

Here, FCA US's common course of conduct with respect to the Defect gives rise to the basis for the claims at bar and demonstrates that common proof, not dependent on any individual Class Member's circumstances, will overwhelmingly predominate in this case and weighs determinatively in favor of certification.

The common questions applicable to every Class Member include whether there is a Defect, whether FCA US was aware of the existence of the Defect, whether FCA US concealed the existence of the Defect, and whether Class Members sustained damages. Courts have routinely found that similar common issues predominate in automotive defect cases. *See, e.g.*, *Daffin*, 458 F.3d at 554; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (common issues predominate such as whether Land Rover was aware of and had a duty to disclose the defect); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 532-34 (C.D.

Cal. 2012) (predominance found based on common evidence of the nature of the defect, the defect's impact on vehicle safety, Honda's knowledge, and what Honda disclosed to consumers). Given the uniformity of the Defect and FCA US's conduct, resolution of the Settlement Class's claims is particularly susceptible to adjudication on a collective basis pursuant to Rule 23(b)(3).

### ii.    A class action is a superior method of adjudication

Rule 23(b)(3) also requires that Plaintiffs demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, class wide resolution of this action is the superior method of adjudication.

First, the value of the claims is too low to incentivize many Class Members to litigate their claims individually and weighs in favor of concentrating the claims in a single forum. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 861 (6th Cir. 2013). This is especially true here, where Settlement Class Members would likely be unable or unwilling to individually shoulder the expense of litigating the claims at issue against a well-funded Defendant like FCA US, given the potential limited monetary awards for those Settlement Class Members.

In addition, because the central issues here are common to all Class Members, resolution on a class-wide basis is the most efficient method of resolving the claims.

*See* 2 William B. Rubenstein, Newberg on Class Actions, § 4.74 (5th ed. 2020) (noting that "a finding of predominance is typically . . . coupled with a finding that a class is manageable"). Indeed, proceeding as a class action will "achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'" *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1946 Amendment; *see also Bobbit v. Acad. of Court Reporting, Inc.*, 252 F.R.D. 327, 345 (E.D. Mich. 2008).

## VI.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions. *See* Fed. R. Civ. P. 23(e); *Amchem*, 521 U.S. at 617. Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate." *UAW*, 497 F.3d at 631 (citing *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *UAW*, 497 F. 3d at 632 ("[W]e must consider—the federal policy favoring settlement of class actions"); *Vassalle v. Midland Funding LLC*, 2014 WL 5162380, at \*6 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ("It is axiomatic that the settlement of class-action litigation is favored"); *Griffin v.*

*Flagstar Bancorp, Inc*., 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.").

The Sixth Circuit utilizes seven factors in evaluating class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 626; *see also Williams*, 720 F.2d at 922-23. In considering these factors, courts apply a "strong presumption" in favor of finding a settlement to be fair. *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement"); *see also Bautista v. Twin Lakes Farms, Inc.*, 2007 WL 329162, at *5 (W.D. Mich. Jan. 31, 2007); *Robinson v. Ford Motor Co*., 2005 WL 5253339, at *4 (S.D. Ohio June 15, 2005).

As set forth below, the seven-factor standard supports approval of the Settlement Agreement.

### A.    There is No Fraud or Collusion

The Parties have at all relevant times been represented by experienced counsel. Interim Co-Lead Class Counsel have significant experience litigating

numerous consumer class actions, including automotive defect cases. The Settlement Agreement was achieved only after arm's-length and good faith negotiations between the Parties with mediators Layn Phillips and Gregory P. Lindstrom. As such, there is no indication of fraud or collusion. *In re Telectronics Pacing*, 137 F. Supp. 2d at 1018 (citing NEWBERG ON CLASS ACTIONS § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

### B. The Complexity, Expense, and Likely Duration of the Litigation Favor Approval

The Settlement in this action comes at an opportune time given that, if the litigation continues, there will be substantial additional expense to the Parties associated with necessary expert discovery, dispositive motion practice, and pre-trial preparations. The Parties have negotiated at arm's-length early in the litigation preventing the need for a drawn-out multi-year litigation battle that would have consumed thousands of hours in attorney time, millions of dollars in litigation expenses for both Parties, and delayed relief to the Class. If litigation continues, for example, the Parties will engage in extensive fact and expert discovery, including depositions, the review of thousands of documents, and future briefing on motions to dismiss, class certification, and summary judgment. Moreover, a trial in this action would be complex given the relevant factual and legal issues involved.

And, even if Plaintiffs prevailed at trial, it could be years before any Settlement Class member receive any benefit in light of the likely post-trial motions and appeals to follow. Meanwhile, the Settlement provides substantial relief to the Settlement Class in a prompt and efficient manner. "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006).

### C.      The Amount of Discovery Engaged in by the Parties Favors Approval

Even though Settlement negotiations began prior to the formal commencement of discovery, the Parties have exchanged significant confirmatory discovery regarding the Defect during Settlement negotiations, including FCA US's production of approximately 10,000 pages of confidential internal documents. Plaintiffs have also consulted extensively with their experts to review this information and analyze the Defect. This discovery allowed Interim Co-Lead Class Counsel to make informed decisions regarding the terms of the Settlement Agreement and sufficiently assess whether they are fair, reasonable, and adequate.

### D.      The Likelihood of Success on the Merits Favors Approval

When evaluating the reasonableness of a class action settlement, courts consider "the risks, expense, and delay Plaintiffs would face if they continued to prosecute this complex litigation through trial and appeal and weighs those factors against the amount of recovery provided to the Class in the Proposed Settlement."

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). A settlement is generally viewed favorably because it "avoids the costs, delays, and multitudes of other problems associated with them." *See In re Telectronics Pacing*, 137 F. Supp. 2d at 1013 (citation and internal quotation marks omitted).

Here, but for the Settlement, the litigation would continue to be contested, and counsel for all Parties were committed to litigate this case through trial and beyond, if necessary. Accordingly, there are substantial risks and costs if this action were to proceed. While Interim Co-Lead Class Counsel believe that the Plaintiffs and putative Class would ultimately prevail at trial, Interim Co-Lead Class Counsel recognize that ultimate success is not assured and believe that this Settlement, when considering the risks of proving both liability and recoverable damages, is unquestionably fair, adequate, and reasonable. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *11 (E.D. Mich. Dec. 13, 2011) (finding that while plaintiffs may "remain optimistic about their ultimate chance of success[,] there is always a risk that Defendants could prevail with respect certain legal or factual issues," which weighs in favor of approval of settlement). As such, avoiding unnecessary expense of time and resources clearly benefits all parties and the Court. *See UAW v. Ford Motor Co.*, 2006 WL 1984363, at *24 (E.D. Mich. July 13, 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement.").

21

### E.      Experienced Class Counsel's Opinions Favor Approval

In considering approval of a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006). Interim Co-Lead Class Counsel here have extensive experience in handling class action cases, including automotive defect cases like at issue here (as discussed below). Interim Co-Lead Class Counsel have thoroughly investigated and analyzed the claims alleged in this action, have made informed judgments regarding the Settlement and believe it is fair, reasonable, and adequate. Interim Co-Lead Class Counsel also engaged in extensive, good-faith negotiations overseen by experienced mediators. This further weighs in support of preliminary approval.

### F.      The Settlement is Fair to Absent Class Members

This factor evaluates whether the settlement "appears to be the result of arm's length negotiations between the parties and fairly resolves all claims which were, or could have been asserted." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) (internal citation omitted). As set forth above, the Settlement Agreement was reached only after multiple arm's-length mediation sessions and extensive settlement discussions over the course of more than a year. The resulting Settlement Agreement provides fair terms to all Settlement Class Members. Moreover, the release in this case extends only to claims that were

or could have been asserted in this case and, thus, there is no risk of unfairness to absent class members.

### G.  The Settlement is Consistent with the Public Interest

Finally, the Court should consider whether the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc.*, 962 F.2d at 1205). Here, it is clearly in the public interest to approve this Settlement. The Settlement provides extensive benefits including immediate improvements to consumer safety and material monetary benefits; resolves the claims of the Class; eliminates the risk of non-recovery on behalf of the Class; provides certainty to the Parties and the Class; and eases the burden of the Court's resources.

Overall, given the complexity, expense, and risks with continued litigation, the proposed settlement is fair, adequate, and reasonable.

## VII.  THE COURT SHOULD APPOINT CLASS COUNSEL

Pursuant to Fed. R. Civ. P. 23(g), Plaintiffs also move to appoint The Miller Law Firm, P.C., Hagens Berman Sobol Shapiro, LLP, and McGuire Law, P.C. as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Sauder Schelkopf, and Berger Montague P.C. as Plaintiffs' Steering Committee Class Counsel. Rule 23(g)

focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*Id.* Here, each of Rule 23(g)(1)(A)'s considerations weigh strongly in favor of finding proposed Class Counsel as adequate. Specifically, proposed Class Counsel did substantial work identifying and investigating potential claims and properly supporting the allegations in the Amended Class Action Complaint. As part of their investigation and work, proposed Class Counsel retained and consulted with multiple experts, and carefully reviewed public materials along with documents and information produced by FCA US.

As reflected in their firm resumes, proposed Class Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation, including claims of the type asserted in this action. *See* Exhibits 2-4. Hence, proposed Class Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, satisfy Rule 23(g).

## VIII.  THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which the Class Notice is disseminated, as well as its content, must satisfy Fed. R. Civ. P. 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See Daoust*, 2019 WL 1055231, at \*2. These requirements are adequately satisfied here. Rule 23(e) requires that notice of a proposed settlement be provided to class members. Notice satisfies the Rule when it adequately puts Settlement Class Members on notice of the proposed settlement and "describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Daoust*, 2019 WL 1055231, at \*2.

Here, following the Court granting preliminary approval of the Settlement, the Settlement Administrator will provide the Short Form Notice by direct U.S. mail. *Id.* § 5.3, Ex. C to Settlement Agreement. The Settlement Administrator will also set up and maintain a settlement website where Class Members can access a "Long-Form Notice" (*Id.*, Ex. B to Settlement Agreement), a Claim Form, a copy of the Settlement Agreement, the operative complaint, and additional information about the Action and Settlement. *Id.* The Short-Form Notice will include the address of the settlement website, as well as a toll-free number for an interactive voice recording

service that allows Class Members to leave a request for a paper copy of the Long-Form Notice.

The proposed notice plan satisfies all of Rule 23's requirements. The language of the Class Notice was drafted and agreed to by the Parties and is written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement benefits and release of claims; (4) the deadlines and instructions for requesting exclusion; (5) the identity of Class Counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline and instructions for objecting to the Settlement. *See* Settlement Agreement at Exs. B and C. The Class Notice thus allows Settlement Class Members to make an informed and intelligent decision on whether to submit a Claim Form, exclude themselves. or object to the Settlement. In addition, pursuant to Fed. R. Civ. P. 23(h), the proposed Class Notice sets forth the maximum amount of Attorneys' Fees and Expenses and Service Awards that may be sought.

The dissemination of the Class Notice likewise satisfies all requirements. The Settlement Administrator will mail the Short Form Notice to the last known address of each potential member of the Settlement Class, which will be checked and updated via the National Change of Address database. *See* Settlement Agreement, § 5.4. If any Class Notice is returned as undeliverable, the Settlement Administrator

shall perform a reasonable search for a more current address and re-send the Class Notice. *Id.* § 5.6.

Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

## IX.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interest of the Class Members; (2) preliminarily certify the proposed Settlement Class for settlement purposes only; (3) preliminarily appoint The Miller Law Firm, P.C., Hagens Berman Sobol Shapiro, LLP, and McGuire Law, P.C. as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Sauder Schelkopf, and Berger Montague P.C. as Plaintiffs' Steering Committee Class Counsel; (4) approve the form and content of, and direct the distribution of, the proposed Class Notice and accompanying Claim Form, and authorize and direct the Parties to retain Kroll Settlement Administration as Settlement Administrator; and (5) schedule a Final Approval Hearing not earlier than one hundred and eighty (180) days after Preliminary Approval is granted.

Dated: March 23, 2022                    Respectfully Submitted,

**THE MILLER LAW FIRM, P.C.**

By: *<u>/s/ E. Powell Miller</u>*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Elaine T. Byszewski
Christopher R. Pitoun
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (888) 381-2889
elaine@hbsslaw.com
christopherp@hbsslaw.com

**MCGUIRE LAW, P.C.**
Myles McGuire
Evan M. Meyers
Eugene Y. Turin

28

55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

*Interim Co-Lead Class Counsel for
Plaintiffs and the Putative Class*

**MCCUNE WRIGHT AREVALO, LLP**
Richard D. McCune
David C. Wright
Steven A. Haskins
Mark I. Richards
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

**SAUDER SCHELKOPF**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

**BERGER MONTAGUE PC**
Russell D. Paul
Jeffrey L. Osterwise
Amey J. Park

29

Abigail J. Gertner
1818 Market Street Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
josterwise@bm.net
apark@bm.net
agertner@bm.net

*Interim Plaintiffs' Steering Committee for
Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 23, 2022, I electronically submitted the foregoing to the Court via the ECF/Utilities function and thereafter emailed counsel of record proof of submission of this document.

*/s/ E. Powell Miller*
E. Powell Miller