## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| AMBER WOOD, *et al.*, individually and on behalf of all others similarly situated, | Case No. 5:20-cv-11054-JEL-APP |
| Plaintiffs, | District Judge Judith E. Levy |
| v. | Magistrate Judge Anthony P. Patti |
| FCA US LLC, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Amber Wood, Thomas Weiner, Karen Burke, Nick Gizzarelli, Guy West, Kyle Davis, Rebekah Aeren Wright, Catherine Coppinger, Kimberly Eager, Roberto Hernandez, Mikaelyn McDowell, Rosalind Burks, Holly Hickman, Amber Portugal, Michael Sanchez, Adam Dyer, Arteal Jordan, Vivien Nagy, Katlyn Wills, Cheryl Miller, Kelly Johnson, Holly Kundel, Ryan Hall, Danielle Coates, Kelsey Williams, Daniel Scott, Ryan Graham, Robert Johnston, Deborah Johnston, Michelle Schmid, Nathaneal Romanchuk, Nicolette Watson, Desiree Tarro, Pamela Anderson, Caren Christman, Joshua Caples, Luis Munoz, Sherri McCall, Krishawn Durham, Katie Kuczkowski, Daniel McGorrey, and Tera Castillo (collectively, "Plaintiffs"), by and through their attorneys, respectfully move the Court for an

Order:

1.      Granting final approval of the proposed class action Settlement;

2.      Certifying the Settlement Class for purposes of effectuating the Settlement; and

3.      Appointing Class Counsel.

In support thereof, Plaintiffs have contemporaneously filed the below Memorandum of Law as well as a Joint Declaration of E. Powell Miller, Steve W. Berman, and Myles McGuire.

In accordance with L.R. 7.1(a), Plaintiffs' counsel sought the concurrence of Defendant's counsel on November 15, 2022. Defendant states that it supports and agrees with the relief sought herein.

For the reasons set forth in the Memorandum of Law, Plaintiffs respectfully request that the Court grant their Unopposed Motion.

Dated: November 17, 2022          Respectfully Submitted,

**THE MILLER LAW FIRM, P.C.**

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

ssa@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Elaine T. Byszewski
Christopher R. Pitoun
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (888) 381-2889
elaine@hbsslaw.com
christopherp@hbsslaw.com

**MCGUIRE LAW, P.C.**
Myles McGuire
Evan M. Meyers
Eugene Y. Turin
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

*Co-Lead Class Counsel for Plaintiffs and the Putative Class*

**MCCUNE WRIGHT AREVALO, LLP**
Richard D. McCune
David C. Wright
Steven A. Haskins

3

Mark I. Richards
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

**SAUDER SCHELKOPF**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

**BERGER MONTAGUE PC**
Russell D. Paul
Jeffrey L. Osterwise
Amey J. Park
Abigail J. Gertner
1818 Market Street Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
josterwise@bm.net
apark@bm.net
agertner@bm.net

*Plaintiffs' Steering Committee for Plaintiffs
and the Putative Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| AMBER WOOD, *et al*., individually and on behalf of all others similarly situated, | Case No. 5:20-cv-11054-JEL-APP |
| Plaintiffs, | District Judge Judith E. Levy |
| v. | Magistrate Judge Anthony P. Patti |
| FCA US LLC, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF <u>CLASS ACTION SETTLEMENT</u>

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should approve the proposed settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)

Suggested Answer: Yes.

2.      Whether the Court should finally certify the Action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the Settlement only.

Suggested Answer: Yes.

3.      Whether the Court should appoint The Miller Law Firm, P.C., Hagens Berman Sobol Shapiro, LLP, and McGuire Law, P.C. as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Sauder Schelkopf, and Berger Montague P.C. as Plaintiffs' Steering Committee Class Counsel?

Suggested Answer: Yes.

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED...................................................................... ii
TABLE OF CONTENTS.......................................................................................... iii
TABLE OF AUTHORITIES ..................................................................................... iv
TABLE OF MOST CONTROLLING AUTHORITIES ...................................... vii
  I.     INTRODUCTION .........................................................................................1
  II.    ARGUMENT ...................................................................................................3
     A.   The Settlement Readily Meets the Standard for Final Approval .............3
     B.   Both the Rule 23(e)(2) Factors and the Sixth Circuit Final Approval
           Factors Support Approval of the Settlement .............................................6
       1.   The Relief Provided to the Settlement Class is Adequate ....................6
       2.   Plaintiffs and Class Counsel Adequately Represented the Settlement
            Class ........................................................................................................9
       3.   The Settlement Was Negotiated at Arm's-Length...............................10
       4.   The Complexity, Costs, Risks, and Delay of Further Litigation, Trial,
            and Appeal............................................................................................12
           a)  The Significant Costs and Delay of Further Litigation ..................12
           b)  Risks to Continued Litigation........................................................13
       5.   Extent of Discovery Completed and Stage of Proceedings .................15
       6.   The Experience and Views of Counsel.................................................16
       7.   Reaction of the Settlement Class to the Settlement ............................16
           a)  Objections ......................................................................................17
       8.   Public Interest Favors Approval of the Settlement..............................20
       9.   The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval
            of the Settlement...................................................................................20
           a)  The Proposed Method of Processing Class-Member Claims is
              Effective........................................................................................21
           b)  Requested Attorneys' Fees and Expenses are Fair and Reasonable ..
              22
           c)  The Settlement Treats Settlement Class Members Equitably ........22
  III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .......23
  IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23......23
  V.    THE COURT SHOULD APPOINT CLASS COUNSEL ......................25
  VI.   CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Arledge v. Domino's Pizza, Inc.*,
  2018 WL 5023950 (S.D. Ohio Oct. 17, 2018)......................................................11

*Athan v. U.S. Steel Corp.*,
  523 F. Supp. 3d 960 (E.D. Mich. 2021)...................................................... passim

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993).........................................................................7

*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019) ........................................... passim

*Does 1-2 v. Deja Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) ..................................................................6

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ................................................................24

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ...............................................................6

*Griffin v. Flagstar Bancorp, Inc.*,
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ....................................................6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir.1998) .................................................................7

*In re Canadian Superior Sec. Litig.*,
  2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011)......................................................12

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ........................................................5, 6

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ..........................................................12

*In re Flint Water Cases*,
 571 F. Supp. 3d 746 (E.D. Mich. 2021) ........................................................ passim

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
 726 F.2d 1075 (6th Cir. 1984) ............................................................................14

*In re Nationwide Fin. Servs. Litig.*,
 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ................................................5, 17

*In re Netflix Priv. Litig.*,
 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................................12

*In re Polyurethane Foam Antitrust Litig.*,
 168 F. Supp. 3d 985 (N.D. Ohio 2016) ....................................................... 7, 9, 14

*IUE-CWA v. Gen. Motors Corp.*,
 238 F.R.D. 583 (E.D. Mich. 2006) ....................................................................5, 23

*Leonhardt v. ArvinMeritor, Inc.*,
 581 F. Supp. 2d 818 (E.D. Mich. 2008) ..............................................................4, 5

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
 315 F.R.D. 226 (E.D. Mich. 2016) ......................................................................15

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
 234 F.R.D. 627 (W.D. Ky. 2006) .........................................................................13

*Officers for Just. v. Civil Serv. Comm'n of S.F.*,
 688 F.2d 615 (9th Cir. 1982) ................................................................................5

*UAW v. Gen. Motors Corp.*,
 497 F.3d 615 (6th Cir. 2007) ...................................................................... passim

*UAW v. Gen. Motors Corp.*,
 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ........................................... 16, 20

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983) ..............................................................................16

## Rules

Fed. R. Civ. P. 23 ............................................................................... 3, 5, 24

Fed. R. Civ. P. 23(a) .................................................................................... 3

Fed. R. Civ. P. 23(b)(3) ............................................................................... 3

Fed. R. Civ. P. 23(e) ................................................................................. 3, 4

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................... 23

Fed. R. Civ. P. 23(e)(2) ............................................................................ 3, 4

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................... 9

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................ 10

Fed. R. Civ. P. 23(e)(2)(C)(i) ..................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................... 21

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................... 21

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................... 21, 23

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................ 21

Fed. R. Civ. P. 23(e)(3) ............................................................................... 4

Fed. R. Civ. P. 23(h) ................................................................................. 24

L.R. 7.1(a) ................................................................................................. 2

## <u>TABLE OF MOST CONTROLLING AUTHORITIES</u>

- *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960 (E.D. Mich. 2021)

- *Daoust v. Maru Rest., LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019)

- *In re Flint Water Cases*, 571 F. Supp. 3d 746 (E.D. Mich. 2021)

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)

- Fed. R. Civ. P. 23(e)

Plaintiffs, on behalf of themselves and the proposed Class, respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement ("Final Approval Motion") and respectfully move the Court for final approval of the proposed Class Action Settlement ("Settlement" or "Settlement Agreement") entered into with Defendant FCA US LLC ("Defendant or "FCA US"), as set forth in the Settlement Agreement. The Settlement Class consists of:

> All individuals who purchased or leased in the United States one of the following vehicles equipped with a 2.4L Tigershark engine: model years 2015-2017 Chrysler 200; model years 2013-2016 Dodge Dart; model years 2014-2019 Jeep Cherokee manufactured prior to July 2018; model years 2015-2018 Jeep Renegade; model years 2017-2018 Jeep Compass; model years 2015-2018 Ram Promaster City; and model years 2016-2018 Fiat 500x.

*See* Exhibit 1, Settlement Agreement, § 2.9.

## I.    INTRODUCTION

Subject to this Court's final approval, Plaintiffs, through their counsel, have negotiated the Settlement with FCA US, in exchange for the release of all claims brought in this Action. As described below and in the accompanying Joint Declaration, the Settlement is an excellent result for the Settlement Class, providing a significant and certain benefit to vehicle owners nationwide in a case that presented numerous hurdles and risks, including those of continued litigation.

As described below and in the Joint Declaration, Plaintiffs' decision to settle

the Action was well-informed by an extensive investigation, substantial discovery, and protracted arm's-length negotiations supervised by experienced mediators, Judge Layn Phillips and Gregory P. Lindstrom of Phillips ADR. While Plaintiffs believe that their claims are meritorious, they also recognize that, in the absence of a settlement, they faced substantial risks to obtaining any benefit for the Settlement Class—let alone a benefit greater than that afforded by the Settlement. In reaching the Settlement, Plaintiffs and Class Counsel also carefully considered the risks (and delay) of continued litigation, class certification, and a potential jury trial. Given that there is no guarantee that Plaintiffs' allegations would survive a motion to dismiss, motion for class certification opposition, or motion for summary judgment, the adequacy of the Settlement here is underscored.

The Court preliminarily approved the Settlement, and provisionally certified the Settlement Class for purposes of effectuating the Settlement, by Order dated June 7, 2022 (the "Preliminary Approval Order"). ECF No. 64. By the same Order, the Court approved the process by which Settlement Class Members would receive notice of the Settlement and submit claims, objections, or requests for exclusion. The deadlines to submit objections and requests for exclusion from the Settlement Class have passed.[1] Only 461 requests for exclusion and 5 objections have been

---

[1] Pursuant to the Preliminary Approval Order, the deadline for requests for exclusion and objections was October 21, 2022.

made to the Settlement. *See* Exhibit 2, Declaration of Settlement Administrator. This means that only 0.016% of Settlement Class Members sought exclusion and 0.00018% of Settlement Class Members objected.

For these reasons, Plaintiffs submit that the Settlement readily meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. Plaintiffs also request that the Court finally certify the Settlement Class for purposes of effectuating the Settlement pursuant to Rules 23(a) and (b)(3), as nothing has changed to alter the propriety of the Court's provisional certification of the Settlement Class in its Preliminary Approval Order.[2]

## II.    ARGUMENT

### A.    The Settlement Readily Meets the Standard for Final Approval

Rule 23(e) requires judicial approval for any settlement of class action claims. Where, as here, a settlement is binding on class members, the Court may approve it "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs the Court to examine whether:

---

[2] Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 59), and the reasons supporting certification of the Settlement Class set forth therein, are incorporated herein by reference.

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e), courts in this Circuit consider the following seven factors in determining whether a class action settlement should be approved:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *accord Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960 (E.D. Mich. 2021); *Daoust v. Maru Rest., LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019); *In re Flint Water Cases*, 571 F. Supp. 3d 746, 769 (E.D. Mich. 2021). In its analysis, the Court "may choose to 'consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case.'" *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 832 (E.D. Mich. 2008).[3]

_____

[3] The December 1, 2018 amendments to Rule 23(e)(2) were not intended to "displace any factor" used by courts to assess final settlement approval, but rather to focus on core substantive and procedural concerns to guide the approval decision. Fed. R. Civ. P. 23 Advisory Committee's note to 2018 amendment. The factors in amended Rule 23(e)(2) are entirely consistent with the factors used by the Sixth Circuit to

The determination of whether a settlement is fair, reasonable, and adequate "is committed to the sound discretion of the district court." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006). In making this determination, the Court must consider "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009). "Thus, in determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness,' . . . and in the end, the Court's determinations are no more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Leonhardt*, 581 F. Supp. 2d at 831 and *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). In determining whether to approve a settlement, courts should also recognize "the federal policy favoring settlement of class actions." *UAW*, 497 F.3d

---

assess final settlement approval and both sets of factors are addressed in the sections below.

at 632.[4]

As demonstrated herein and in the Joint Declaration, the Settlement readily satisfies each of the factors enumerated in Rule 23(e)(2) and traditionally considered by courts in the Sixth Circuit, furthers the favored public policy goal of resolving class action claims through negotiated settlements, and warrants final approval.

### B. Both the Rule 23(e)(2) Factors and the Sixth Circuit Final Approval Factors Support Approval of the Settlement

#### 1. <u>The Relief Provided to the Settlement Class is Adequate</u>

A key factor that courts consider in assessing approval of a class action settlement is plaintiff's likelihood of success on the merits balanced against the relief offered in the settlement. *UAW*, 497 F.3d at 631; *In re Flint*, 571 F. Supp. 3d at 778-79. To that end, the Sixth Circuit has expressly recognized that "nonpecuniary benefits" can confer "substantial benefit" to a settlement class. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (affirming final approval of settlement where it provided for, among other things, "changes in corporate governance"); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 897 (6th Cir. 2019) ("When compared against the risks involved in litigating or arbitrating the Dancers' claims, the value of the Settlement Agreement is significant. The injunctive relief

---

[4] *See also Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("[T]he law favors the settlement of class action lawsuits."); *Cardizem*, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable[.]'").

mandates extensive changes to Déjà Vu's business practices[.]"); *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement.").

Moreover, "[t]he possibility 'that the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate,' because '[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998)) (alterations in original).

As outlined in the Preliminary Approval Motion (ECF No. 59, PageID.2028-2031), the benefits included in the Settlement consist of:

(1) An extension of the existing Powertrain Limited Warranty, applicable to the Class Vehicles, to cover the cost of all parts and labor needed to repair a condition caused by the Defect, to a period of seven (7) years or one-hundred thousand (100,000) miles (whichever occurs first) from the In-Service Date of the Class Vehicle. Settlement Agreement § 3.1. This Extended Warranty follows the Class Vehicles; thus, it would apply to subsequent purchasers and lessees. *Id.* § 3.2.

(2) The implementation of three Customer Service Notifications ("CSN") to remedy the Defect. All Class Members who are current owners or lessees of a Class Vehicle subject to CSN W20 and CSN W84 are entitled to bring their vehicle to any authorized FCA US dealership to have the Powertrain Control Module (PCM) or PCM and Transmission Control Module (TCM) reprogrammed to address any excess oil consumption and repair the Defect in their Class Vehicle. *Id.* § 3.7. All Class Members who are current owners or lessees of Class Vehicles subject to CSN W80 may have

7

an oil consumption test performed, free of charge, by any authorized FCA US dealership. Moreover, if the Class Vehicle fails the oil consumption test, the Class Member is entitled to have an authorized FCA US dealership replace the vehicle's engine long block pursuant to CSN W80 at no cost to the Class Member. *Id.* § 3.8.

(3) In connection with CSN W20, CSN W80, and CSN W84, any Class Member who paid for a repair relating to the Defect is entitled to submit a claim for reimbursement. *Id.* § 3.9.

(4) FCA US will also reimburse Class Members the costs of towing and repair-related transportation expenses, such as a rental car ("Repair-Related Reimbursements"), that were incurred in connection with a Qualifying Repair. *Id.* § 3.10. Reimbursements to Class Members for Repair-Related Reimbursements pursuant to the Settlement are limited to a total of $8 million. *Id.* In the event Claims for Repair-Related Reimbursements exceed $8 million, Claims will be adjusted on a *pro rata* basis. *Id.* The Settlement Agreement details the procedure for submitting a Claim for a Repair-Related Reimbursement. *Id.* § 3.11.

(5) Claimants making a Claim for towing expenses shall be entitled to full reimbursement. *Id.* § 3.13. Claimants may also receive up to $300 per Claim for rental car expenses. *Id.*

(6) All Class Members whose vehicles are subject to CSN W80 will automatically receive a cash payment of $340 if their vehicle is diagnosed as having a Defect and receives an engine long block replacement. *Id.* § 3.15. FCA US will work directly with its dealership network to acquire the necessary data to identify which Class Members received an engine block replacement under CSN W80. *Id.* § 3.16. FCA US will provide the data directly to the Settlement Administrator, who will then mail a check directly to the Class Members identified by FCA US without the need to submit any Claim. *Id.*

(7) FCA US shall be responsible for all administration expenses, including notice to the Class Members of the proposed Settlement. *Id.* § 3.17.

These are meaningful benefits which directly address the Defect by giving

Settlement Class Members the ability to get their vehicles fixed, as well as

potentially receiving reimbursements for out-of-pocket costs related to the Defect. The result achieved is also significant in light of the risks of further litigation and the possibility of obtaining no relief whatsoever. While Plaintiffs are confident in the merits of their claims and believe they could have ultimately prevailed against Defendant, they recognize the numerous risks that would accompany further litigation. As a result, the relief provided to the Settlement Class is more than adequate since "there was a very real risk of complete non-recovery." *Polyurethane Foam*, 168 F. Supp. 3d at 1001.

### 2. Plaintiffs and Class Counsel Adequately Represented the Settlement Class

Final approval of the Settlement is also warranted under Rule 23(e)(2)(A) because Plaintiffs and Class Counsel "have adequately represented the class." Here, Plaintiffs have actively monitored and engaged in the prosecution and resolution of the Action on behalf of the Settlement Class. To this end, Plaintiffs regularly communicated with Class Counsel on case developments, reviewed Court filings, and conferred with Class Counsel throughout the Parties' settlement negotiations.

In addition, Plaintiffs—whose vehicles are alleged to suffer from the same defect as all other Class Vehicles, and whose claims arise from the same course of conduct by Defendant—have claims that are typical of other Settlement Class Members and their interests are aligned. *See UAW*, 497 F.3d at 626 (representation adequate where class members' "legal interests parallel the named representatives'

interests").

Class Counsel have also adequately represented the Settlement Class. As detailed in the Joint Declaration, Class Counsel actively litigated this Action for more than two and a half years, undertaking a substantial investigation with their experts and through review of FCA US's discovery, in conjunction with protracted settlement negotiations. With the knowledge gleaned from these efforts, Class Counsel carefully considered the strengths and weaknesses of the claims asserted and the risks of further litigation when agreeing to resolve the Action. Class Counsel firmly believe the Settlement represents an excellent result in the best interests of the Settlement Class. *See UAW*, 497 F.3d at 626 (finding representation adequate because counsel "was willing to, and indeed did, commit substantial 'resources . . . to representing the class'") (alteration in original).

### 3. <u>The Settlement Was Negotiated at Arm's-Length</u>

Rule 23(e)(2)(B) and the first *UAW* factor—the nature of the negotiations and the risk of fraud or collusion—also support final approval because the Settlement was reached only after arm's-length negotiations facilitated by an experienced and well-respected mediator. Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *Athan*, 523 F. Supp. 3d at 966; *In re Flint Water*, 571 F. Supp. 3d at 780.

Here, the Parties' settlement negotiations were extensive and included the determined assistance of two experienced mediators. Over the course of sixteen (16) months, the Parties participated in settlement negotiations, including three formal mediation sessions (on October 26, 2020, April 6, 2021, and August 25, 2021) with the assistance of experienced mediators Judge Layn Phillips and Gregory P. Lindstrom of Phillips ADR. The Parties have also engaged in numerous individual discussions with the mediators and countless arm's-length negotiations with each other. These extensive negotiations included the production of approximately 10,000 pages of documents from FCA US, as well as Plaintiffs' consultation with multiple experts to provide independent analysis of the alleged Defect and FCA US's proposed remedies. As such, the risk that the Settlement was the product of collusion is effectively non-existent. *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion[.]"); *see also Daoust*, 2019 WL 2866490, at *2 ("To help resolve the case, the parties enlisted the services of a retired Federal Judge, Judge Steven Rhodes, in facilitating the Parties' mediation, thereby reinforcing that the Settlement Agreement is non-collusive."); *In re Flint Water*, 571 F. Supp. 3d at 780 ("There appears to be no better evidence of a truly adversarial bargaining process than the presence of a neutral third party mediator.") (internal citation

omitted).[5]

### 4. <u>The Complexity, Costs, Risks, and Delay of Further Litigation, Trial, and Appeal</u>

Rule 23(e)(2)(C)(i) and the second *UAW* factor further support final approval of the Settlement, as "[c]ourts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497-98 (E.D. Mich. 2008) ("[T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation."); *Athan*, 523 F. Supp. 3d at 967 ("The complexity, expense, and length of continued litigation militate in favor of this settlement."). As discussed below, if the Action continued, the Settlement Class faced protracted delays, substantial litigation costs, and significant risks.

### a) The Significant Costs and Delay of Further Litigation

The Parties engaged in mediation efforts prior to FCA US filing a motion to dismiss Plaintiffs' CMCAC. If the Settlement had not been reached, continued

---

[5] *See also, In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) ("[A] strong presumption of fairness attaches because the settlement was reached by experienced counsel after arm's length negotiations."); *In re Netflix Priv. Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("[P]resumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel.").

litigation of the Action—through the motion to dismiss briefing, fact discovery, expert discovery, class certification, *Daubert* and dispositive motion practice, pre-trial preparation, and post-trial appeals—would have undoubtedly been a long and expensive endeavor. *See Daoust*, 2019 WL 2866490, at *2 (approving settlement where, "[i]f forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling").

In contrast, the Settlement has provided an immediate and substantial benefit for the Settlement Class without exposing Settlement Class Members to the risk, expense, and delay of continued litigation. *See id.* ("The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution."); *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("Consideration of the possible expense, duration, and complexity of this litigation also weighs in favor of the proposed settlements.").

### b)  Risks to Continued Litigation

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Polyurethane Foam*, 168 F. Supp. 3d at 995 (quoting *In re Gen. Tire & Rubber Co.*

*Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Here, Plaintiffs faced significant risks to both certifying a class and establishing Defendant's liability if the Action continued through summary judgment and trial.

As is the case in any class action, Plaintiffs faced significant risks at the motion to dismiss, class certification, summary judgment, and trial stages—needing to prevail on all four to recover relief for the class. While FCA US's specific defenses were not formally raised in the litigation, it surely would have engaged in hard-fought litigation, likely over the course of multiple years, to avoid a jury verdict in Plaintiffs' favor. Typically, defendants in automotive defect class actions argue that there is no common defect, that state law bars Plaintiffs' legal claims, that the class cannot be certified for predominance, commonality, typicality, or adequacy reasons, that Plaintiffs did not suffer damages, or that Plaintiffs do not have the necessary evidence to prove their legal claims at trial. This would have resulted in tens or hundreds of thousands of hours and millions of dollars in expenses, on both sides, being dedicated to this case.

However, pursuant to the Settlement, the Settlement Class has received a substantial benefit without having to undertake these risks, and others, which weighs strongly in favor of final approval. *Athan*, 523 F. Supp. 3d at 967-68 ("There are many unique factual and novel legal issues in this matter that make it difficult for the Parties to gauge their respective likelihood of success, resulting in a considerable

14

risk to each side. Thus, the Court agrees that this proposed settlement is a fair and reasonable settlement in relation to the potential risks and uncertain recovery in this case."); *Daoust*, 2019 WL 2866490, at *2 ("Here, the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses present risk. The settlement eliminates this uncertainty.").

### 5. <u>Extent of Discovery Completed and Stage of Proceedings</u>

"The relevant inquiry with respect to [the third *UAW*] factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016). In this case, Class Counsel spent significant time and resources analyzing the legal and factual issues of this case, including, inter alia: (i) conducting a wide-ranging legal and factual investigation; (ii) drafting a detailed, 960-page Amended Complaint; (iii) engaging in extensive discovery through the Parties' mediation efforts, including the production and review of approximately 10,000 pages of documents from FCA US; (iv) engaging in significant consultation with multiple experts to provide independent analysis of the alleged Defect and FCA US's proposed remedies; and (v) engaging in a hard-fought mediation process.

As such, "all of aspects of the dispute are well-understood by both sides, and the parties have completed enough discovery to recommend settlement." *Daoust*,

2019 WL 2866490, at *2; *Athan*, 523 F. Supp. 3d at 967 ("The Court is satisfied that the Parties reviewed all of the exchanged and available information and used it to evaluate the merits of their respective claims or defenses in comparison to the costs and risks associated with further litigation.").

### 6.  <u>The Experience and Views of Counsel</u>

The fifth *UAW* factor also supports the Settlement, as courts recognize that the opinion of experienced and knowledgeable counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). Class Counsel, who have extensive experience prosecuting complex class actions (*see* ECF No. 19), are intimately familiar with the facts and legal issues involved in the Action and firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Likewise, Defendant was represented by highly experienced and skilled counsel who vigorously defended their clients.

Class Counsel's opinion that the proposed Settlement is fair "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006); *Daoust*, 2019 WL 2866490, at *3; *Athan*, 523 F. Supp. 3d at 967- 68.

### 7.  <u>Reaction of the Settlement Class to the Settlement</u>

"In considering a class action settlement, the Court should also look to the reaction of the class members." *Nationwide*, 2009 WL 8747486, at *7. In accordance

with the timeline provided in the Preliminary Approval Order, Kroll Settlement Administration has disseminated 2,730,780 copies of the Notice to potential Settlement Class Members. *See* Exhibit 2 ¶ 5. The deadlines for Settlement Class Members to object to the Settlement, or to request exclusion from the Settlement Class, have both passed. The response to the Settlement has been overwhelmingly favorable. There have only been 461 requests for exclusion and 5 objections (many of which were not properly submitted). Exhibit 2 ¶ 14. This means that only 0.016% of Settlement Class Members sought exclusion and 0.00018% of Settlement Class Members objected. These percentages support final approval of the Settlement. *See Daoust*, 2019 WL 2866490, at *3 ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."); *In re Flint Water*, 571 F. Supp. 3d at 783-84 (granting final approval of settlement despite "a very small percentage" of class members objecting to its terms). Additionally, a total of 2,300 claim forms have been submitted by Class Members. Exhibit 2 ¶ 13. The Settlement also has the full support of all the Plaintiffs.

### a)  Objections[6]

The Preliminary Approval Order details the requirements for submitting a proper objection, including submitting it to the Court and providing specific information. ECF No. 64, PageID.2447-2452, ¶ 15. Class Counsel have received

---

[6] Exhibit 3 consists of the objections received by Class Counsel.

17

five objections, only one of which was filed with the Court (ECF No. 66) and none of which come from professional objectors. Class Counsel address each objection herein, even those not properly submitted, in the interest of transparency. Class Counsel have also communicated with FCA US in the hopes of addressing the objectors' concerns and issues with their vehicles. However, to date, none of the objectors have withdrawn their objections.

Susan and Sterling Koch filed their objection (dated October 19, 2022) with the Court on October 26, 2022. The objection is largely based on the fact that their "vehicle is past the time of extended warranty offered." However, given that they purchased their vehicle in 2016 and it only has 39,100 miles, it appears that it would currently fall under the extended warranty. Their objection has been presented to FCA US, which is currently in the process of expediting its efforts to have the Kochs' vehicle repaired under CSN W80 at their local dealership and resolving the issues they initially had when they presented their vehicle for repair.

Wayne Kessler submitted a letter to Class Counsel on September 25, 2022. His objection is that "it is inequitable to cover some purchasers for up to 100,000 miles of use, and others such as myself for only seven years of ownership." However, a time/mileage warranty is the industry standard, and the extended warranty would be provided equally to the more than 2.7 million Class Members. Mr. Kessler had the opportunity to exclude himself from the Class and seek separate, individual

relief, but he did not do so.

Bejan Faramarzi submitted a letter to Class Counsel on October 7, 2022. Mr. Faramarzi wishes for his engine to be replaced. But the Settlement provides the repairs to remedy the Defect, including engine replacement if his vehicle falls within that subset of vehicles. It is unclear whether Mr. Faramarzi has attempted to receive any of the CSN repairs offered through the Settlement and he has not reported that his vehicle actually suffers from any excess oil consumption.

Victoria Mingle submitted a letter to Class Counsel on October 21, 2022. Ms. Mingle was in a traffic accident and her vehicle was declared a total loss. She states that something happened to her vehicle, and it subsequently rolled down a hill and hit five cars at the bottom. She provides no inference or evidence that the cause of the crash was the Oil Consumption Defect. Ms. Mingle also had the opportunity to opt-out of the Class and pursue individual remedies against FCA US, but did not do so.

Finally, Aaron Roberson emailed Class Counsel on October 29, 2022 (eight days after the objection deadline). Mr. Roberson misconstrues the Settlement and the relief afforded by it. In fact, his vehicle falls squarely within the CSN W80 population that *would* entitle him to an engine replacement if it has excess oil consumption. *See* Settlement Agreement § 3.8. Nor does his objection account for the $340 that he would automatically receive if his engine is ultimately replaced, or

the up to $300 in rental car coverage that he would be entitled to. *See id.* at §§ 3.13, 3.15. His objection also does not account for the extended warranty coverage that would also apply to his vehicle until at least 2024. *Id.* at § 3.1. In short, while Mr. Roberson seems to have run into some difficulties with having repairs performed—which Class Counsel have raised with FCA US and are working to ensure that they are resolved—his objection is not factually accurate and should not prevent the more than 2.7 million Class Members from receiving Settlement relief.

### 8.  Public Interest Favors Approval of the Settlement

The final *UAW* factor strongly supports this Settlement. "The Sixth Circuit has recognized that 'the law generally favors and encourages the settlement of class actions.'" *Daoust*, 2019 WL 2866490, at *3 (quoting *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)); *In re Flint Water*, 571 F. Supp. 3d at 784. The Settlement furthers this policy and promotes judicial efficiency; it resolves at once the claims of the entire Settlement Class and avoids further litigation.

### 9.  The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the Settlement

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Rule

23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

### a)  The Proposed Method of Processing Class-Member Claims is Effective

As explained above and in Exhibit 2, the method of processing Class Members' claims is effective. First, Class Members are automatically entitled to many of the Settlement benefits without having to submit any claim form or take any other steps. For example, all Class Vehicles automatically receive an extension of the Powertrain Limited Warranty. Additionally, the Class Members who are subject to CSN W20 and CSN W84 are entitled to bring their vehicle to any FCA US-authorized dealership to have the PCM and TCM reprogrammed. Those Class Members who fall under CSN W80 are entitled to an oil consumption test and, if the vehicle fails the test, the Class Member is entitled to a free replacement of the vehicle's engine long block. In conjunction, all Class Members whose vehicles are subject to CSN W80 and receive an engine long block replacement, will automatically receive a cash payment of $340. No claim form is required.

Claim forms are required, however, for Class Members who seek reimbursement, such as for towing and repair-related transportation expenses (such as a rental car). FCA US, in tandem with the Settlement Administrator, will process the claims in accordance with the Settlement Agreement and Court's orders.

### b) Requested Attorneys' Fees and Expenses are Fair and Reasonable

Class Counsel are contemporaneously filing a Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses concurrently herewith (the "Fee and Expense Motion"), which is incorporated by reference. As detailed therein, Class Counsel is applying to the Court for attorneys' fees and expenses in the amount of $7,500,000. This sum includes all fees, costs, and expenses incurred by Class Counsel in connection with this litigation. Class Counsel is also applying to the Court for service awards of $1,000 to $3,000 for each Plaintiff, for a total of $81,000 in service awards. Like the relief sought through this Motion, FCA US does not oppose Class Counsel's Fee Motion.

### c) The Settlement Treats Settlement Class Members Equitably

Finally, the proposed Settlement treats all Settlement Class Members equitably relative to one another. There is no preferential treatment for any member of the Settlement Class. Plaintiffs will receive the same benefit as all Settlement Class Members, other than any Court-approved service awards related to their representation of the Settlement Class.[7]

---

[7] Rule 23(e)(2)(C)(iv) asks the Court to consider any additional agreements made by the Parties in connection with the Settlement. The Settlement (and its related exhibits) is the only agreement made by the Parties in connection with the Settlement.

### III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class for settlement purposes. *See* ECF No. 64, ¶¶ 7-12. Nothing has changed to alter the propriety of the Court's provisional certification and, for all the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 59), Plaintiffs respectfully request that the Court finally certify the Settlement Class for purposes of settlement. *See Gen. Motors*, 315 F.R.D. at 235 (approving certification of settlement class where "[n]othing ha[d] changed to alter the Court's" provisional certification in the preliminary approval order).

### IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).

Here, both the content of the Court-approved Notice and its distribution to Settlement Class Members satisfy all applicable notice requirements. In accordance with the Preliminary Approval Order, KCC disseminated, via U.S. mail, the Short

Form Class Notice to the last known address of each potential member of the Settlement Class. *See* Settlement Agreement § 5.3. The Long Form Notice, as well as the Settlement, Preliminary Approval Order, and other relevant documents, were also posted on the Settlement website.

Here, the Notice satisfies all of Rule 23's requirements. The language of the Class Notice was drafted and agreed to by the Parties and was written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for requesting exclusion; (5) the identity of Class Counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. The Class Notice thus allowed Settlement Class Members to make an informed and intelligent decision on whether to exclude themselves or object to the Settlement. In addition, pursuant to Rule 23(h), the proposed Class Notice set forth the maximum amount of attorneys' fees and expenses and service awards that may be sought.

In sum, the Notice provided sufficient information for Settlement Class Members to make informed decisions regarding the Settlement, fairly apprised them of their rights with respect to the Settlement, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Rule

23, and due process. Comparable notice programs are routinely approved by courts in this Circuit. *See, e.g., Daoust*, 2019 WL 2866490, at *4.

## V.    THE COURT SHOULD APPOINT CLASS COUNSEL

In its Preliminary Approval Order, the Court conditionally appointed Class Counsel. *See* ECF No. 64, ¶¶ 12. For the reasons outlined in Plaintiffs Motion for Preliminary Approval (ECF No. 59, PageID.2045-2046), Plaintiffs respectfully request that the Court finally appoint Class Counsel.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement and certify the Settlement Class.

Dated: November 17, 2022          Respectfully Submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Elaine T. Byszewski
Christopher R. Pitoun
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (888) 381-2889
elaine@hbsslaw.com
christopherp@hbsslaw.com

**MCGUIRE LAW, P.C.**
Myles McGuire
Evan M. Meyers
Eugene Y. Turin
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

*Co-Lead Class Counsel for Plaintiffs and the Putative Class*

**MCCUNE WRIGHT AREVALO, LLP**
Richard D. McCune
David C. Wright
Steven A. Haskins
Mark I. Richards
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250

26

Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

**SAUDER SCHELKOPF**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

**BERGER MONTAGUE PC**
Russell D. Paul
Jeffrey L. Osterwise
Amey J. Park
Abigail J. Gertner
1818 Market Street Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
josterwise@bm.net
apark@bm.net
agertner@bm.net

*Plaintiffs' Steering Committee for Plaintiffs
and the Putative Class*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 17, 2022, I electronically submitted the foregoing to the Court via the ECF/Utilities function and thereafter emailed counsel of record proof of submission of this document.


*/s/ E. Powell Miller*
E. Powell Miller
